**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Daniel Horner, et al., Plaintiffs, v. Timney Triggers LLC, Defendant. | No. CV-26-03822-PHX-MTL **ORDER** |

Before the Court is Plaintiffs' Motion to Remand (Doc. 19) and the parties' responses to the Court's Order to Show Cause (Doc. 26).

## I. BACKGROUND

Plaintiffs are Daniel Horner, a competitive shooter and firearms instructor, and his company, Tactical Industry Innovations. (Doc. 1-3 at 10.) Defendant Timney Triggers is a manufacturer of OEM and aftermarket triggers for firearms. (*Id.*) Plaintiffs allege that Mr. Horner developed a new firearm trigger system and presented the concept to Defendant in 2020. (*Id.* at 11-12.) Plaintiffs contend that they reached an agreement with Defendant (the "License Agreement") under which Defendant would manufacture and sell the trigger system, and in return, Defendant would pay Plaintiffs a royalty of 7% on sales of the trigger system and a monthly consulting fee. (*Id.* at 12.) Plaintiffs concurrently filed a provisional patent application for the trigger system, issued as U.S. Patent No. 12,092,411 (the "'411 Patent"). (*Id.* at 10-12.)

The agreement between the parties fell apart. Defendant purportedly made regular

payments to Plaintiffs under the License Agreement, then abruptly stopped amidst concerns raised by Plaintiffs about product quality and safety. (*Id.* at 12.) Plaintiffs allege that Defendant continued to sell the trigger system anyways. (*Id.* at 12-13.) On April 2, 2026, Plaintiffs told Defendant that the License Agreement was terminated. (*Id.* at 13.) Plaintiffs further declared that any use of the '411 Patent that did not comply with the terms of the license amounts to infringement. (*Id.*)

Five days after Plaintiffs announced the License Agreement was terminated, they filed suit in Arizona Superior Court, alleging breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), and unjust enrichment (Count III). (*See generally id.* at 10-15.) The Complaint alleges that Defendant withheld payments in breach of the License Agreement. (*Id.* at 13.) It also claims that Defendant's nonpayment amounts to bad faith. (*Id.* at 14.) The Complaint also raises, in the alternative to the contract claims, a claim for unjust enrichment based on Defendant's purported receipt of a benefit from its use of the '411 Patent. (*Id.* at 14.)

Defendant filed an answer in Superior Court, contending that it engaged its Chief Engineer, Calvin Motley, to work with Mr. Horner to develop the trigger system, and Mr. Motley conceived several aspects of the design. (*Id.* at 25.) According to Defendant, "Plaintiffs deny Motley's involvement and intentionally withheld material information from the USPTO that Motley was a co-inventor." (*Id.* at 26.) Pursuant to these allegations, Defendant also raises several counterclaims in its Answer, seeking: (1) a declaration of non-infringement of the '411 Patent; (2) a declaration of invalidity of the '411 Patent; (3) a declaration of unenforceability of the '411 Patent; and (4) a declaration of correction of inventorship. (*Id.* at 24-30.) Having raised counterclaims under federal law, Defendant removed the case to this Court under 28 U.S.C. § 1454 and *Gunn v. Minton* , 568 U.S. 251 (2013). (Doc. 1.) Plaintiffs filed an Answer to Defendant's Counterclaims, raising the following counter-counterclaims: (1) direct infringement of the '411 Patent; and (2) contributory infringement of the '411 Patent. (Doc. 11.)

Plaintiffs filed a Motion to Remand, arguing that its original state contract claims

should be remanded to Superior Court. (Doc. 19.) The parties have fully briefed that Motion. (*See* Docs. 19, 20, 25.) The parties have also filed briefs in response to the Court's order to show cause why the Court should not decline its discretionary jurisdiction under the Declaratory Judgment Act. (*See* Docs. 26, 27, 29, 30.)

## II. LEGAL STANDARD

A party may seek remand to state court if the district court lacks jurisdiction. 28 U.S.C. § 1447(c). "The defendant has the burden of proving by a preponderance of the evidence that the requirements for removal jurisdiction have been met." *Cnty. Of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022). Removal jurisdiction is construed in favor of remand. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005). Additionally, federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).

## III. DISCUSSION

Plaintiffs advance the following justifications for remanding the claims originally raised in their Complaint: (1) the claims do not arise under federal law; and (2) exercising supplemental jurisdiction over the claims would be inappropriate. (*See* Doc. 19.) Defendant concedes that the claims in the Complaint do not arise under federal law. (*See* Doc. 20 at 8 (stating that "[Defendant] does not need to show that Plaintiff's original Complaint independently arises under federal patent law," and "[t]he relevant question is whether Plaintiffs' contract claims share a common nucleus of operative fact").) The Court therefore assesses whether it is appropriate to exercise supplemental jurisdiction over the claims asserted in Plaintiff's Complaint.

Defendant removed this action pursuant to 28 U.S.C. § 1454(a), which states "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents… may be removed to the district court of the United States." For civil actions, such as this, that are "removed solely under [28 U.S.C. § 1454]," the district court may, for specified reasons, "remand any claims within the supplemental jurisdiction of the

district court under section 1367." 28 U.S.C. § 1454. Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir.2004). "Generally, claims arise out of a common nucleus of operative fact when they 'involve the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts.'" *AngioScore, Inc. v. TriReme Med., LLC*, 666 F. App'x 884, 887 (Fed. Cir. 2016) (quoting *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1563–64 (11th Cir. 1994)).

The parties agree that "[t]here is no dispute" that "both [Defendant]'s counterclaims and [Plaintiffs'] counter-counterclaims are properly before the federal court under § 1454." (Doc. 25 at 6-7; *see also* Doc. 27 at 8.) The question is thus whether Plaintiffs' state claims share a common nucleus of operative fact with the parties' claims concerning the validity of the '411 Patent and the inventorship associated with it.

"[C]laims arise out of a common nucleus of operative fact when they 'involve the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts." *AngioScore*, 666 F. App'x at 887 (quoting *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1563-64 (11th Cir. 1994)). It is insufficient for state claims to "relate generally" to federal claims. *Id.*

According to Plaintiffs' Complaint, the License Agreement granted a license for Defendant to manufacture and sell a trigger system that was not yet patented. (Doc. 1-3 at 12.) According to Plaintiffs, the terms of the License Agreement did not involve a patent. (*Id.*) Rather, Plaintiffs "[c]oncurrently . . . filed a provisional patent application for the" trigger system, (*id.*), and Plaintiffs' assertion of Defendant's infringement of the '411 Patent pertains only to the time after the License Agreement was terminated, (Doc. 25 at

3). Defendant, on the other hand, contends that a promise to seek a patent for the trigger system was a term of the License Agreement. (Doc. 1-3 at 22.) Defendant asserts fraudulent inducement as an affirmative defense to Plaintiffs' state contract claims, alleging that "Plaintiffs induced Defendant to make payments to Plaintiffs by misleading Defendant to believe that the parties would jointly seek patent protection and ownership of the patent(s) would rest in Defendant by assignment." (*Id.*)

Because ambiguities are to be resolved in favor of remand, *see Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), the Court adopts Plaintiffs' characterization of the License Agreement for purposes of this Order. The authorities Defendant cites to are therefore inapposite. Unlike this case, in *Ameranth, Inc. v. ChowNow, Inc.*, the court determined whether to exercise supplemental jurisdiction over a license agreement that unquestionably granted a non-exclusive license to certain patents owned by Plaintiff. No. 20-cv-02167, 2021 WL 3686056, at *2 (S.D. Cal. Aug. 18, 2021). And in *Apollo Enterprise Solutions, Inc. v. Lantern Credit, LLC*, the court considered whether it had original, not supplemental jurisdiction, over certain claims. No. 17-cv-02331, 2018 WL 437472, at *5 (C.D. Cal. Jan. 16, 2018).

Because Plaintiffs make no allegation that the License Agreement's terms involved a patent, any breach of the License Agreement by Defendant does not turn on the validity of the patent, since Defendant's obligation to pay royalties exists regardless of the later-issued '411 Patent. The Court therefore finds that Plaintiffs' breach of contract claim (Count I) and bad faith claim (Count II) do not turn on the same facts required to answer the question of federal patent law raised in the counterclaims and counter-counterclaims. These claims therefore do not arise from the same nucleus of operative fact, and the Court lacks supplemental jurisdiction over the claims. Because the Court finds that these claims do not share a common nucleus of operative fact, the Court need not address the parties' arguments concerning whether the claims fit within the limited categories outlined in 28 U.S.C. § 1367(c) in which the Court may exercise its discretion to decline to exercise supplemental jurisdiction.

The Court, however, finds that the unjust enrichment claim (Count III) asserted in Plaintiffs' Complaint arises out of the same nucleus of operative fact as the patent claims. Plaintiffs proceed on that claim based on an allegation that "[Defendant] has received a benefit from the use of [Plaintiffs'] patent for the Glock Trigger System." (Doc. 1-3 at 14.) Whether the '411 Patent is valid and infringed is dispositive of the claim. The Court therefore finds that the unjust enrichment claim shares a common nucleus of operative fact with the federal patent claims.

The Court may still decline to exercise supplemental jurisdiction over the unjust enrichment claim if it falls within a category of claims outlined in 28 U.S.C. § 1367(c). The parties dispute whether the unjust enrichment claim belongs to the category of claims defined in 28 U.S.C. 1367(c)(4), which includes claims that implicate "exceptional circumstances, [where] there are other compelling reasons for declining jurisdiction." Courts apply Section 1367(c)(4) by considering whether declining jurisdiction would best accommodate the values of "economy, convenience, fairness, and comity." *Executive Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994). The Court generally agrees with Defendant that none of these values would be served by remanding the unjust enrichment claim to Superior Court, since remand would duplicate proceedings on the question of the validity of the patent and risk inconsistent rulings. Section 1367(c)(4) is thus inapplicable, and the Court will exercise supplemental jurisdiction over the unjust enrichment claim (Count III).

Having found that Plaintiffs' breach of contract claim (Count I) and bad faith claim (Count II) belong in Superior Court, while the other claims do not, the Court will sever and remand those claims to Superior Court pursuant to 28 U.S.C. § 1441(c).

The Court will also discharge its Order for Defendant to show cause why the Court should not decline its discretionary jurisdiction under the Declaratory Judgment Act (Doc. 26). The Court will exercise jurisdiction over Defendant's Counterclaims. *See Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352 (Fed. Cir. 2004) (holding "that when there has been a direct charge of infringement by the patentee, and an actual controversy

exists due to ongoing activity that has been accused of infringement, the accused infringer has the right to resolve the dispute") (citing *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1526 (Fed. Cir. 1992)).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Remand (Doc. 19) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiffs' breach of contract claim (Count I) and breach of the covenant of good faith and fair dealing claim (Count II) are **REMANDED** to the Arizona Superior Court in Maricopa County. Plaintiffs' unjust enrichment claim (Count III), Defendant's counterclaims, and Plaintiffs' counter-counterclaims are retained in this Court.

**IT IS FINALLY ORDERED** that the Order to Show Cause (Doc. 26) is **DISCHARGED**.

Dated this 15th day of September, 2026.

Michael T. Liburdi
Michael T. Liburdi
United States District Judge